IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

MICHAEL L. YOUNG,

           Plaintiff,

v.                                          CIVIL ACTION NO. 2:18-cv-01469

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

           Defendant.

**MEMORANDUM OPINION AND ORDER**

Plaintiff Michael L. Young ("Plaintiff") brings this action pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001–1461, alleging that Defendant State Farm Mutual Automobile Insurance Company ("Defendant"),[1] his former employer, improperly refused to pay him a severance benefit upon his separation. (*See* ECF No. 6.) Before this Court are the parties' cross-motions for summary judgment. (ECF Nos. 22, 23.) For the reasons explained more fully herein, Plaintiff's motion for summary judgment (ECF No. 22) is **DENIED**. Defendant's motion for summary judgment (ECF No. 23) is **GRANTED**.

*I. BACKGROUND*

Plaintiff began his employment with Defendant as a proximity field auto estimator in 1993. (ECF No. 20-4 at 5.) Prior to May 2014, Plaintiff was a mobile worker. (*Id.*) At that time, Plaintiff began working in the Charleston, West Virginia, office. (*Id.*)

---

[1] Defendant was improperly named in Plaintiff's complaint as "State Farm Insurance Companies." (*See* ECF No. 1 at 1 n.1.)

However, he was never reclassified in Defendant's computer system as an in-office worker. (*See id.* at 1, 7.)

In May 2016, Defendant announced a "transition plan" that affected certain teleworking employees. (ECF No. 20-3.) Eligible employees who were to be terminated under the transition plan would receive severance benefits. (*See id.* at 3.) Initially, Plaintiff was identified as an employee impacted by the transition plan, and he was to be terminated on October 31, 2016. (*Id.* at 14.) Shortly afterward, however, Defendant questioned whether Plaintiff was misclassified because although "[h]is department code reflects a mobile worker . . . he has been working from the Charleston (WV) Operations Center for several years now." (ECF No. 20-4 at 1.) Plaintiff's supervisors confirmed that he was an in-office worker and referred to his misclassification as a mobile worker as an "oversight." (*Id.* at 2–4.)

Defendant conducted an internal review of the situation in August 2016 and ultimately concluded that Plaintiff should be removed from the transition plan's list of eligible employees "[b]ased on the fact that [Defendant] took [Plaintiff's] vehicle away and leadership says that he was continuously working form [sic] an in office location." (*Id.* at 6–7.) Defendant informed Plaintiff of its decision and the reasons for it on or about August 16, 2016. (*Id.* at 9.) Specifically, Defendant reasoned that Plaintiff was an in-office worker, which was "further support[ed]" by the fact that Plaintiff's company vehicle "was removed in 2014." (*Id.*) Plaintiff responded on August 24, 2016, agreeing that his "dedicated use of a company vehicle was removed in 2014" but arguing that he was still classified as a teleworker who worked in the office "as a convenience." (*Id.* at 10–11.) As support for his assertion that he was an impacted teleworker, Plaintiff recollected that he was forced to take a vacation day in February 2015 when the office was

2

closed due to weather and that he worked outside the office in March 2016. (*Id.* at 10.) He requested that Defendant "revisit" its decision. (*Id.*)

Defendant further researched the matter, concluding that Plaintiff "was required to work in the office based on the type of work he was doing and the need for supervision of his work" beginning in May 2014. (*Id.* at 16.) Defendant also confirmed that Plaintiff's company vehicle was reassigned on August 15, 2014, and he was not permitted to work from home even when requested. (*Id.*) Ultimately, Defendant determined that Plaintiff's "location code should have been changed [from mobile worker to the Charleston office], but it never was." (*Id.*) As a result of this review, on September 1, 2016, Defendant formally denied Plaintiff's claim under its severance plan because Plaintiff was an in-office worker not impacted by the transition plan and because "there was no Company Initiated Termination." (*Id.* at 17–18.) However, despite Defendant's decision that Plaintiff did not qualify for benefits under the severance plan, on or about September 13, 2016, Defendant sent Plaintiff a packet of materials to review and sign in order to receive such benefits. (*Id.* at 19–28.) On or about October 11, 2016, Defendant sent Plaintiff a letter stating that he received the packet "in [e]rror." (*Id.* at 32.)

In the meantime, Plaintiff appealed Defendant's denial of benefits, repeating his arguments that he "worked often from the Charleston, WV office as a convenience" but "was never reassigned to that office," was forced to take a paid vacation day when the office was closed due to weather in February 2015 because he was a teleworker, and worked in the field in March 2016. (*Id.* at 29–31.) He also noted that he received the September 13 correspondence from Defendant and was considering retirement to coincide with his termination date. (*Id.* at 31.) Defendant's Severance Appeal Committee met on October 24, 2016, and "unanimously agreed that [Plaintiff] was not an

3

impacted employee under an approved transition plan" and was "ineligible for severance benefits." (ECF No. 20-5 at 24.) The committee explained that even though Plaintiff was listed in Defendant's computer system as a teleworker, "supporting information clearly illustrated that he has not been operating in a teleworker capacity since 2014 and instead has been working in [the Charleston office]." (*Id.*) Defendant informed Plaintiff of the committee's decision by letter dated October 25, 2016, but it appears that Plaintiff did not receive the letter until on or about December 19, 2016. (*Id.* at 25, 29–30.) Plaintiff left his employment with Defendant on or about October 31, 2016, when he retired. (*See* ECF No. 26 at 9.)

Plaintiff filed this action on October 24, 2018. (ECF No. 1-1.) The parties filed their cross-motions for summary judgment on July 18, 2019. (ECF Nos. 22, 23.) Defendant timely responded to Plaintiff's motion (ECF No. 25), and Plaintiff timely replied (ECF No. 27). Plaintiff timely responded to Defendant's motion (ECF No. 26), but Defendant did not file a reply. As such, the motions are fully briefed and ready for resolution.

II. LEGAL STANDARDS

A. *Motion for Summary Judgment*

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material when it 'might affect the outcome of the suit under the governing law.'" *Strothers v. City of Laurel*, 895 F.3d 317, 326 (4th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A genuine dispute arises when 'the evidence is such that a reasonable jury could return a verdict for the non-moving party.'" *Id.* (quoting *Anderson*, 477 U.S. at 248). "Thus, at

4

the summary judgment phase, the pertinent inquiry is whether there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018) (alteration and internal quotation marks omitted).

"The burden is on the nonmoving party to show that there is a genuine issue of material fact for trial . . . by offering 'sufficient proof in the form of admissible evidence' . . . ." *Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 216 (4th Cir. 2016). In ruling on a motion for summary judgment, this Court "view[s] the facts and all justifiable inferences arising therefrom in the light most favorable to the nonmoving party." *Jones v. Chandrasuwan*, 820 F.3d 685, 691 (4th Cir. 2016) (quoting *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 312 (4th Cir. 2013)).

B. *Review of Defendant's Denial of Benefits*

Generally, this Court reviews de novo an ERISA plan administrator's denial of benefits. *Johnson v. Am. United Life Ins. Co.*, 716 F.3d 813, 819 (4th Cir. 2013) ("[T]he default standard of review is de novo." (quoting *Woods v. Prudential Ins. Co. of Am.*, 528 F.3d 320, 322 (4th Cir. 2008))); *see Helton v. AT&T Inc.*, 709 F.3d 343, 351 (4th Cir. 2013) ("If the plan does not give the administrator discretionary authority, a district court reviews the coverage determination de novo." (citing *Woods*, 528 F.3d at 322)). However, where "the plan grants the administrator discretion to determine a claimant's eligibility for benefits . . . the administrator's decision is reviewed for abuse of discretion." *Cosey v. Prudential Ins. Co. of Am.*, 735 F.3d 161, 165 (4th Cir. 2013) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 111 (1989); *Williams v. Metro. Life Ins. Co.*, 609 F.3d 622, 629–30 (4th Cir. 2010)). "[N]o specific words or phrases are required to

confer discretion, but . . . a grant of discretionary authority must be clear." *Id.* (citing *Gallagher v. Reliance Standard Life Ins. Co.*, 305 F.3d 264, 268 (4th Cir. 2002)).

Here, Defendant asserts that the plan language gives "the Plan Administrator full discretionary authority to make severance benefit eligibility decisions." (ECF No. 24 at 10.) Defendant points to the following plan language:

> 4.03 <u>Rules and Regulations.</u> The Plan Administrator shall have the power to make all reasonable rules and regulations required in the administration of the Plan and for the conduct of its affairs, to make all determinations that the Plan requires for its administration, and to construe and interpret the plan whenever necessary to carry out its intent and purpose and to facilitate its administration. All such rules, regulations, and determinations shall be binding on all parties.

(ECF No. 20-1 at 5–6; *see* ECF No. 24 at 10.) This language confers discretionary authority on the plan administrator. *DeWitt v. State Farm Ins. Cos. Ret. Plan for U.S. Employees*, 905 F.2d 798, 801 (4th Cir. 1990) (finding identical language sufficiently broad as to "vest discretion in the plan administrator"). Therefore, this Court's review is for abuse of discretion. *Id.* Plaintiff does not contend otherwise. (*See* ECF No. 26 at 2 (arguing that Defendant "did not properly exercise its discretion").)

"Under [the abuse-of-discretion] standard, this Court should affirm a discretionary decision of a plan administrator if it is the result of a 'deliberate, principled reasoning process' and is supported by 'substantial evidence,' even if [this Court] would reach a different decision independently." *Helton*, 709 F.3d at 351 (quoting *Williams*, 609 F.3d at 630). Relevant factors that this Court considers "in reviewing the reasonableness of a plan administrator's decision" include (1) the language of the plan;

6

(2) the purposes and goals of the plan; (3) the adequacy of the materials considered to make the decision and the degree to which they support it; (4) whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan; (5) whether the decisionmaking process was reasoned and principled; (6) whether the decision was consistent with the procedural and substantive requirements of ERISA; (7) any external standard relevant to the exercise of discretion; and (8) the fiduciary's motives and any conflict of interest it may have. *Williams*, 609 F.3d at 630 (quoting *Booth v. Wal-Mart Stores, Inc. Assocs. Health & Welfare Plan*, 201 F.3d 342–43 (4th Cir. 2000)). And this Court's review is based on the information within the administrative record and other information "known to the administrator when it rendered its decision." *Helton*, 709 F.3d at 352.

### III. ANALYSIS

#### A. *Defendant's Denial of Benefits*

Defendant reasonably determined that Plaintiff was not entitled to benefits under the severance plan's terms. The severance plan was intended to "provid[e] severance payments to Employees who lose their jobs as a result of or in connection with reorganizations, office moves, closures, consolidations, overstaffing or lack of work." (ECF No. 20-1 at 1.) To that end, the severance plan states that a severance benefit is payable to an "Eligible Employee" "[u]pon his or her Qualifying Termination." (*Id.* at 5.) The severance plan defines "Qualifying Termination" as "the Company initiated termination of an Employee as a result of or in connection with a Triggering Event on a Qualifying Termination Date." (*Id.* at 3.) It further defines "Qualifying Termination Date" as "the date selected by local management as the effective date of the Company initiated termination of an Employee as a result of or in connection with a Triggering

7

Event." (*Id.* at 4.) And it defines "Triggering Event" as "any reorganization, office move, office closure, consolidation, overstaffing, or lack of work." (*Id.* at 3.)

The parties appear to agree that Defendant's 2016 transition plan constituted a Triggering Event affecting teleworkers in West Virginia and set a Qualifying Termination Date of October 31, 2016, for those teleworkers. (ECF No. 22 at 5; ECF No. 24 at 3; *see* ECF No. 20-3 at 2, 5.) The parties also agree that Plaintiff was initially classified as an impacted teleworker under the transition plan and given a Qualifying Termination Date of October 31, 2016. (ECF No. 22 at 10; ECF No. 24 at 12; *see* ECF No. 20-3 at 14.) However, shortly after the transition plan was announced, Defendant questioned whether Plaintiff should have been an impacted employee because he was working in an in-office position and had been "for several years." (ECF No. 20-4 at 1.) Following an internal investigation, Defendant explained to Plaintiff that the transition plan was not intended to apply to employees working in "Migration Locations," and because Plaintiff "ha[d] been primarily working in a Migration Location" since 2014, he was "not impacted by the . . . transition plan." (*Id.* at 9.)

Plaintiff argues that he was a teleworker impacted by the transition plan because he was coded as a teleworker in Defendant's computer system. (ECF No. 22 at 6.) He asserts that in February 2015, when his office was closed due to weather, his superiors forced him to take a paid vacation day due to that status even though the in-office employees received a snow day. (*Id.* at 7–8; *see* ECF No. 20-6 at 49; ECF No. 20-8 at 25.) He also contends that he worked as a teleworker in March 2016. (ECF No. 22 at 6, 9.) Defendant, for its part, acknowledged each of these facts during its review and appeals process. (*See* ECF No. 20-5 at 2.) Specifically, Defendant determined that Plaintiff's "location code was not updated to reflect" his move to an in-office position, that

8

Plaintiff "was required to take a day of [paid vacation] when he did not work at an alternate location (home) during an office closed situation" in February 2015, and that Plaintiff "was utilized in a proximity estimator capacity for approximately 1 week" in March 2016 "[d]ue to severe storm activity." (*Id.*) But Defendant concluded that Plaintiff's actual status as an in-office employee, rather than his status in Defendant's computer system as a mobile worker, controlled his eligibility for severance benefits. (*Id.* at 3.)

This outcome is consistent with the severance plan's language and purpose. The transition plan at issue affected certain employees not based in offices that Defendant intended to keep operational after the transition. (*See* ECF No. 20-3 at 1.) The transition plan provided for severance pay for these employees because they were to lose their jobs due to the office closures and downsizing. (*See id.* at 3.) The terms of the transition plan are limited to "employees in locations not identified as P&C Claims Locations or Migration Locations and those in a teleworker status who have not been selected into the new operating models." (*Id.* at 1.) Put simply, the transition plan was not intended to apply to employees like Plaintiff who worked in an office that was to remain operational. (*See id.*) Presumably, despite the transition plan, Plaintiff would have continued his employment with Defendant because his office was selected as a Migration Location. Instead, Plaintiff chose to retire. (ECF No. 26 at 9.) But the severance plan exists to "provid[e] severance payments to Employees who lose their jobs as a result of or in connection with reorganizations, office moves, closures, consolidations, overstaffing or lack of work." (ECF No. 20-1 at 1; *see id.* at 7.) Without such a "Triggering Event," there can be no company-initiated "Qualified Termination," which precludes Plaintiff from being an "Eligible Employee." (*See* ECF No. 20-1 at 3 (defining

9

"Eligible Employee" as "an Employee . . . whose employment ends due to a Qualifying Termination").)

Further, in light of the severance plan's language and purpose, it was not unreasonable for Defendant to interpret Plaintiff's eligibility for benefits based on the nature of the work Plaintiff actually performed, rather than his coded status in Defendant's computer system. (*See* ECF No. 20-5 at 24.) Defendant reasoned that Plaintiff was not a teleworker impacted under the transition plan because he had worked from the Charleston, West Virginia, location for approximately two years; his use of a company vehicle was discontinued shortly after he began working in the office; and he was continually denied the opportunity to work from home. (*See* ECF No. 20-4 at 5, 17–18; ECF No. 20-5 at 1–3, 24.) Defendant's conclusion is supported by substantial evidence. *See DuPerry v. Life Ins. Co. of N. Am.*, 632 F.3d 860, 869 (4th Cir. 2011) (defining "substantial evidence" as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion" (quoting *LeFebre v. Westinghouse Elec. Corp.*, 747 F.2d 197, 208 (4th Cir. 1984))). By contrast, Plaintiff offers no evidentiary support[2] for his assertion that he worked from the office merely as a convenience—in fact, the administrative record indicates that Plaintiff understood that he was required to work from the office. (*See* ECF No. 20-4 at 2–3.)

In sum, Defendant did not abuse its discretion in denying Plaintiff severance benefits. It reasonably concluded that Plaintiff worked at a Migration Location that was

---

2 Plaintiff states that he "would be willing to participate in depositions" of individuals "that the defense counsel would like to depose." (ECF No. 27 at 7.) However, "consideration of evidence outside of the administrative record is inappropriate when a coverage determination is reviewed for abuse of discretion." *Helton v. AT&T Inc.*, 709 F.3d 343, 352 (4th Cir. 2013). The appropriate time for Plaintiff to introduce additional evidence in support of his position was during Defendant's internal review and appeal process, or at the very least, Plaintiff could have requested limited discovery at the scheduling conference held by this Court if he felt that the administrative record was incomplete. (*See* ECF No. 15.)

not subject to the transition plan, meaning that Plaintiff did not receive a "Qualifying Termination Date" under the plan as a result of a "Triggering Event" and was thus not an "Eligible Employee." (*See* ECF No. 20-1 at 3–4.) However, this Court certainly cannot commend Defendant's handling of this matter. Despite determining that Plaintiff was not an impacted employee under the transition plan and was not entitled to severance benefits, Defendant erroneously sent Plaintiff a severance packet that was purportedly prepared several weeks after Defendant made its initial decision to deny benefits. (*See* ECF No. 20-4 at 19–28, 32.) It does not appear that Defendant acted maliciously, but rather accidentally sent Plaintiff the packet. (*See* ECF No. 20-5 at 3.) Given that Defendant knew as early as August 2016 that Plaintiff was considering retirement to coincide with his separation date (ECF No. 20-4 at 6), this Court would expect Defendant to have taken more care to deliver a correct and consistent message to Plaintiff regarding his eligibility for benefits.

   B. *Defendant's Failure to Timely Provide Documents*

Plaintiff also argues that Defendant failed to timely provide him with certain information he requested on March 1, 2017. (ECF No. 22 at 2–4.) If an adverse benefit determination is upheld on internal review, the plan administrator must, upon request, provide the claimant with "all documents, records, and other information relevant to the claimant's claim for benefits." 29 C.F.R. § 2560.503–1(i)(5), (j)(3); *see Boyd v. Sysco Corp.*, No. 4:13-cv-00599-RBH, 2015 WL 7737966, at *14 (D.S.C. Dec. 1, 2015) ("In addition to requiring an administrator to provide documents to the claimant upon request after the denial of benefits, documents must also be provided upon request after the internal plan appeal, so that the claimant can fully evaluate the advisability of requesting an external review or appealing to federal court."). A document is considered "relevant"

11

if it "[w]as relied upon in making the benefit determination" or "[w]as submitted, considered, or generated in the course of making the benefit determination."  29 C.F.R. § 2560.503–1(m)(8).

In this case, Plaintiff sent a letter dated March 1, 2017, to Defendant in which he requested the following documents:

- A copy of the correspondences sent out to Teleworkers describing the guidelines of the Migration Plan and the results and option for employees who were not selected under the plan from its inception to its completion.
- A copy of the correspondence or order that reclassified [Plaintiff] from a Teleworker to a full time in office employee.
- A copy of the days in which the Kanawha Valley Operation Center located in Charleston WV [sic] was closed due to weather in the month of February 2015.
- A copy of all [Plaintiff's] Vacation approved and taken for the year of 2015.

(ECF No. 20-5 at 28.)  Defendant responded to Plaintiff's request by letter dated March 8, 2017, explaining that the requested information "is not part of the administrative record and thus[] is not in the Severance Appeal Committee's possession."  (ECF No. 20-6 at 44.)  Defendant nonetheless provided Plaintiff with "a copy of the administrative record and the State Farm Insurance Companies Involuntary Severance Payment Plan and its Summary Plan Description."  (*Id.*)  Defendant also provided Plaintiff with the name and contact information of one of its employees who could assist him in obtaining the documents he requested.  (*Id.*)

Plaintiff seems to argue that Defendant was "reluctan[t]" to provide him with the requested documents because correspondence between Defendant's employees indicates that "we aren't providing the specific information he requested." (ECF No. 22 at 2–3; ECF No. 27 at 5; *see* ECF No. 20-6 at 1.) However, that correspondence demonstrates that Defendant provided Plaintiff with information to which he was entitled but did not request—*i.e.*, the administrative record on appeal—and also that Defendant endeavored to locate and provide the requested information. (ECF No. 20-6 at 1.) The administrative record, which comprised the entirety of the documentation considered during the review process, is all Defendant was required to provide. 29 C.F.R. § 2560.503–1(m)(8)(ii).

Plaintiff nonetheless asserts that the information he requested in his letter should have been included in the administrative record "to be fair." (ECF No. 27 at 6.) However, information relating to each of his requests was part of the review process, whether as part of the plan documents and related notices or as part of Plaintiff's submissions. (*See* ECF No. 20-4 at 1, 7, 10, 29–31.) And with respect to Plaintiff's second request, the parties agree that no such documentation exists. (ECF No. 22 at 4; ECF No. 25 at 5.) Moreover, Plaintiff's contention that he did not timely receive the requested information is without merit. On April 24, 2017, Plaintiff sent a second request for the information as instructed in Defendant's March 8 letter. (ECF No. 20-8 at 24.) Defendant responded with the requested information on May 16, 2017. (*Id.* at 25–26.) As such, Defendant timely responded to Plaintiff's requests for documents.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment (ECF No. 22) is **DENIED**. Defendant's motion for summary judgment (ECF No. 23) is **GRANTED**.

**IT IS SO ORDERED**.

The Clerk is **DIRECTED** to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER: December 13, 2019

Dwane L. Tinsley
United States Magistrate Judge